CASE 27.—PROSECUTION AGAINST WOLFORD ADAMS FOR MURDER.—June 12.

# Adams v. Commonwealth

Appeal from Rockcastle Circuit Court.

M. L. JARVIS, Circuit Judge.

Defendant convicted of voluntary manslaughter and appeals—Affirmed.

1.  Homicide—Evidence—Sufficiency—Manslaughter.—In a prosecution for murder, evidence held sufficient to sustain a judgment of conviction of voluntary manslaughter.
2   District and Prosecuting Attorneys—Substitutes—Commonwealth's Attorney Pro Tem.—Statutes.—Ky. Stas. 1903, section 120, provides that, in the absence of the commonwealth's attorney, the circuit judge may appoint a suitable attorney to act, but shall not appoint such attorney to act in his place, unless he and the county attorney are both absent, or of kin to, or of counsel for, accused, except in felony cases. Section 127 provides that the county attorney shall attend to the prosecution of cases in his county in which the commonwealth or county is interested, and also attend the circuit courts held in the county, and aid the commonwealth's attorney in all prosecutions, and, in the latter's absence, shall attend to the commonwealth's business in said courts. In a homicide case the regular commonwealth's attorney was disqualified to prosecute by reason of his employment by accused before his election to defend accused for the same

crime. Held that, construing the two sections together, the circuit judge was authorized, in the absence of both the commonwealth's attorney and the county attorney, or when both are of kin to, or counsel for, accused, to appoint a commonwealth's attorney pro tem. to perform the duties of both, whether in felony or misdemeanor cases, but the judge should not, though the commonwealth's attorney be absent or of kin to or counsel for accused, appoint a commonwealth's attorney pro tem. when the county attorney is present and eligible to serve, except in felony cases, in which event he may appoint a commonwealth's attorney pro tem. but need not do so; and hence the failure of the circuit court to appoint a commonwealth's attorney to assist the commonwealth in accused's trial was not error.

3. Same—Assistants.—While neither the courts nor the commonwealth's or county attorneys should turn over the prosecution of criminal cases to those who are under no responsibility to the state, employed counsel may assist in such cases, and such assistance may be accepted by official prosecutors.

4. Same—County Attorney—Powers and Duties.—While the commonwealth's attorney is the representative of the state in all prosecutions for violations of its penal laws, the county attorney is not less so, and his responsibility under the law is the same, both being required to be honest, fearless, and impartial in the performance of official duty.

5. Criminal Law—Appeal—Reversal—Grounds—Participation of Employed Counsel in Trial.—A judgment of conviction should not be reversed upon the ground that employed counsel were permitted to make the opening statement or closing argument, if it appears that the trial was otherwise properly conducted, and defendant's guilt is reasonably certain.

6. Same—Harmless Error—Argument of Counsel—Retaliatory Statements.—In a homicide case, even though statements by the county attorney in argument as to the peaceable character of decedent were not strictly within the record, where they were made in reply to equally improper statements by defendant's counsel, imputing a violent character to decedent, the court's failure to exclude the statements was not prejudicial error.

7. Same—Trial—Statements of Counsel—Action of Court.—In a homicide case, where the court excluded statements of counsel in argument that certain witnesses testified before the coroner's jury and would have been contradicted by members of that jury had their testimony differed on trial, and

Adams v. Commonwealth.

instructed the jury not to consider it, such statements cannot be considered prejudicial.

8. Same—Reception of Evidence—Rebuttal.—In a homicide case, testimony as to the location of the body of decedent immediately after the killing, location of blood spots, and that no arms were found on decedent, much of which might have been introduced in chief, but which differed in many respects from the other testimony in chief, was proper in rebuttal, where its admission in rebuttal was made necessary by the testimony of accused, which brought out new particulars as to these matters.

JAMES BREATHITT, Attorney General, and T. B. McGREGOR, Assistant Attorney General, for Commonwealth.

## COMMONWEALTH'S CONTENTIONS.

First, that it was not error for the court to fail to appoint a commonwealth's attorney pro tem. when the county attorney was actually present and actually conducting the prosecution and taking the lead, although it might have been the court's duty to appoint a commonwealth's attorney pro tem.

Second, that the alleged misconduct and misstatement of counsel for the commonwealth are mere assertions of the attorneys themselves, and were not prejudicial to appellant's rights or inflammatory, and upon exceptions being taken by appellant, the court properly eliminated the statements excepted to before the jury

Third, that the evidence introduced in rebuttal was competent.

Fourth, that the appellant has had a fair and impartial trial. (Ky. Statutes, sections 118, 120 and 127; Keeton v. Commonwealth, 32 Ky. Law Rep., 1164.)

BETHURUM & BETHURUM for appellant.

## LIST OF AUTHORITIES.

1. Failure to appoint Commonwealth's attorney pro tem. (Keeton v. Commonwealth, 32 Ky. Law Rep., 1164.)

2. Improper conduct of attorneys for the commonwealth. (Roberson's Ky. Criminal Law, section 240; Parker v. Commonwealth, 96 Ky., 213; Dock v. Commonwealth, 21 Gratt., (Va.) 909; Webb v. Commonwealth, 11 Ky. Law Rep., 642; People v. Anderson, 39 Cal., 703; State v. Eden, 8 Wash., 292; Fields v. State,

vol. 129—17

134 Ind., 46; 86 Ky., 663; Howard v. Commonwealth, 114 Ky., 376; Johnson v. Commonwealth, 24 Ky. Law Rep., 844; Powers v. Commonwealth, 26 Ky. Law Rep., 1114; 24 Ky. Law Rep., 842; Polson v. Commonwealth 32 Ky. Law Rep., —.)

3. Incompetent testimony—Rebuttal. (Williams v. Commonwealth, 90 Ky., 596.)

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Appellant was indicted in the Rockcastle circuit court for the murder of William Hays. On the trial the jury, by their verdict, found him guilty of voluntary manslaughter, and fixed his punishment at confinement in the penitentiary 18 years. Judgment was thereupon entered in conformity to the verdict. Appellant was refused a new trial by the circuit court, and by this appeal, seeks a reversal of the judgment of conviction.

Appellant killed Hays by shooting him with a shotgun at the latter's residence. Although but 15 years of age at the time of the homicide, appellant had become grately infatuated with the wife of deceased, who was 25 years of age and the mother of three children. She was evidently a lewd woman, and had maintained an improper intimacy with appellant for at least a year before the homicide. She had twice left her husband, and during one or both of these separations became an inmate of a bawdy house. By correspondence and assiduous personal attention of an affectionate character, she fed appellant's passion until it became his habit to visit her two or three times a week for a year before he killed her husband. During and between such visits she furnished him with cheap novels and other unwholesome reading matter, of the "Buffalo Bill" variety, which could not in any way have profitably ministered to his intellectual or

Adams v. Commonwealth.

moral growth.  On the day of the homicide appellant, gun in hand, left his father's residence, which was about a quarter of a mile from that of deceased, and after, as he claimed, spending two hours in hunting squirrels, reached the house of the latter, upon entering which he leaned his loaded gun against the wall by the door took a chair nearby, and apparently became absorbed in the contents of a novel which Mrs. Hays handed him.  When he arrived at the Hays' residence, deceased was engaged in gathering corn, but soon came to the crib lot with a load, and called to his wife to come to him.  She obeyed the call, and after a short conversation with her husband returned to the room where appellant still sat reading.  Telling appellant of the presence near the house of her husband, she requested him to go to another room, and remain until the husband left, in order that the latter might not see him; but appellant failed to comply with her request.  In a short time deceased went into the house, and, passing through the room by appellant without speaking to him, entered the kitchen, and there deposited his coat which had been carried on his arm.  Again coming into the room where appellant sat, deceased said to him: "Woolford Adams, this is my house and none of yours.  You get out of it."  Upon completing this statement, deceased reached a stove used for heating the room, and, bending over it, proceeded to warm his hands.  While deceased was warming his hands at the stove, appellant got upon his feet, seized his gun, and shot deceased in the jaw and neck.  The latter fell to the floor, and immediately expired.  When shot by appellant, deceased was not menacing him in any way, or even looking at him, and was at the time unarmed.  Thus far we have given, in substance, the testimony of the

Commonwealth which was furnished by Mrs. Hays and two of her children, one eight and the other seven years of age, who beside appellant, were the only eyewitnesses of the tragedy. On the other hand, appellant's testimony was to the effect that deceased upon entering the room cursed his wife and appellant; that at this juncture, fearing an attack from deceased and intending to leave the room to avoid it, appellant picked up his gun, which deceased attempted to grasp with his left hand and take from him; at the same time moving his right hand toward his hip pocket as if to draw a weapon with which to kill him, seeing which appellant pointed the gun at deceased, and fired in his necessary self-defense.

From the foregoing outline of the evidence it will be seen that of the Commonwealth conduced to prove that in shooting deceased appellant was guilty of willful murder, while that of appellant tended to prove that the shooting was excusable on the ground of self-defense. It may be remarked, however, that the fact that the shot from appellant's gun entered the lower side face and neck of deceased would seem to support the testimony of the Commonwealth's witnesses that, when shot, he was warming his hands at the stove, and not looking at appellant. If, as claimed by appellant, he took the life of deceased to save his own, the latter's attack upon him must have been provoked by jealousy arising from appellant's improper intimacy with his wife. Upon the other hand, if appellant took the life of deceased without justification, jealousy doubtless furnished the motive for the homicide, and the act was therefore murder, because maliciously committed. In view of the evidence contained in the record, appellant has in our opinion no right to complain of the verdict. His youth, and the

fact that his inexperience had made him a victim of the arts of a designing woman, no doubt appealed to the sympathy of the jury, and induced them to find him guilty of voluntary manslaughter, when otherwise they would have found him guilty of murder, as charged in the indictment.

We will only consider such of the grounds urged in the circuit court for a new trial as are now relied on by appellant for a reversal of the judgment appealed from. The errors assigned are four in number: (1) That the circuit court failed to appoint a Commonwealth's attorney pro tem. to act in behalf of the Commonwealth in conducting appellant's trial. (2) That employed counsel was improperly permitted to make the closing argument to the jury. (3) That the county attorney and employed counsel were allowed to make in argumnt to the jury improper and inflammatory statements that were prejudicial to appellant's substantial rights. (4) That incompetent evidence was admitted for the Commonwealth in rebuttal.

As to appellant's first contention, it may be remarked the record shows that the regular Commonwealth's attorney was disqualified to engage in the prosecution of appellant by reason of his employment by the latter, before his election as Commonwealth's attorney, to defend him for killing deceased. The Commonwealth was therefore as fully deprived of that officer's services in appellant's case as if he had been absent. Indeed, in contemplation of law he was absent. The Commonwealth, however, was represented throughout appellant's trial by the county attorney, who conducted the examination in chief of the State's witnesses, made an argument to the jury, and properly performed such other duties as are required by law to be discharged by the Commonwealth's at-

torney.   Section 120, Ky. Stats., provides: "In the absence of the Commonwealth's attorney, at any term, or part of a term, of a circuit court, the judge of such court may appoint some suitable attorney to act in his absence   *   *   *   but the court shall not appoint an attorney to act in the place of the Commonwealth's attorney unless he and the county attorney are both absent, or of kin to or counsel for the accused, except in cases of felony." This section contains the only authority conferred by the law of the State upon the circuit judge or other court to appoint a Commonwealth's attorney pro tem.   Section 127, Ky. Stats., 1903, which in part defines the duties of the county attorney, provides: "He shall attend to the prosecution of all cases in his county in which the Commonwealth or the county is interested;   *   *   *   he shall also attend the circuit courts held in his county and aid the Commonwealth's attorney in all prosecutions therein and in the absence of an acting Commonwealth's attorney, he shall attend to all Commonwealth's business in said courts."   Considering the two sections quoted as one (and they should be so read), their meaning is that the judge of the circuit court shall, in the absence of both the Commonwealth's attorney and the county attorney, or when both are of kin to or of counsel for the accused, appoint a Commonwealth's attorney pro tem. to perform the duties of both, whether in cases of felony or misdemeanor.   But that the judge shall not, though the Commonwealth's attorney be absent or of kin to or counsel for the accused, appoint a Commonwealth's attorney pro tem. when the county attorney is present and not of kin to or of counsel for the accused, except in cases of felony, in which event he may appoint a Commonwealth's attorney pro tem., but is not

bound to do so; the appointment being discretionary with him. If this be a correct interpretation of the statute in question, of which we have no doubt, we must further hold that the failure of the circuit court to appoint a Commonwealth's attorney pro tem. to represent the Commonwealth in appellant's trial was not error. The county attorney took an active, if not the leading, part in the prosecution. The record manifests the ability with which he and associate counsel conducted the case, and fails to indicate that in dealing with appellants' substantial rights either was less than ordinarily fair. The prosecution was not, as insisted, wholly turned over to the control of counsel employed by the friends of deceased to convict appellant. It does not appear from the record that the county attorney was, at any stage of the trial, unmindful of his duty, or of the appellant's rights.

We are aware that much may justly be said of the danger of intrusting the prosecution of criminal cases too much to employed counsel, and we do not mean to be understood as holding that either the courts or Commonwealth or county attorneys should be permitted to turn over the prosecution of criminals to those who are under no responsibility to the State, but the right of employed counsel to assist in such cases has long been recognized, and their assistance may be accepted by official prosecutors of the Commonwealth charged with the duty of enforcing the law. Obviously the Commonwealth's attorney is the representative of the State in all prosecutions for violations of its criminal and penal laws, but, under the law, the county attorney is not less so, and his responsibility to the law, the court s,and the people is just as great. Both should be honest, fearless, and impartial in the performance of official duty, and as far removed from

conniving at the escape of the guilty from punishment, as of demanding a conviction that would be unauthorized. It is true, as claimed by counsel for appellant, that this court in Keeton v. Commonwealth, 108 S. W. 315, 32 Ky. Law Rep. 1164, held that it was reversible error for the trial court to refuse to appoint a Commonwealth's attorney pro tem., but it appears from the opinion that the county attorney was in that case permitted by the court to turn over the prosecution of the accused wholly to counsel employed by relatives of the person whom he killed, and that, too, over the objection and notwitstanding a motion of the accused that a Commonwealth's attorney pro tem. be appointed. Upon the facts of that case, we are yet of opinion that the trial court abused its discretion in refusing to appoint a suitable attorney to act in the place of the Commonwealth's attorney; but in discussing generally the power of the judge of the circuit court to make such appointment the opinion in some measure misinterpreted section 120, Ky. Stats., 1903, and entirely overlooked section 127, relating to the duties to be performed by county attorneys in the circuit court. The opinion in Keeton v. Commonwealth, supra, is now, therefore, modified to the extent that it conflicts with the conclusions herein expressed.

The second contention of appellant is not well taken. This court will refuse to reverse a judgment of conviction in a criminal case upon the ground that employed counsel was permitted to make the opening statement or close the argument, if it appears, as in this case, that the trial was otherwise properly conducted, and the defendant's guilt is reasonably certain. Bennyfield v. Commonwealth, 17 S. W. 271, 13 Ky. Law Rep. 446; Roberts v. Commonwealth, 94 Ky. 449, 22 S. W. 845.

The third contention of appellant is likewise untenable. The statements of the county attorney in argument in regard to the peaceable character of deceased, while not strictly within the record, was not more improper than the statements made in argument by appellant's counsel imputing to deceased a character for violence not shown by the evidence. The county attorney was responding to this statement. What he said should have been omitted, but the court's failure to exclude it was not prejudicial error. The further complaint of appellant, that employed counsel in argument to the jury said: "The children (meaning the children of the deceased used as witnesses for the Commonwealth) testified before the coroner's jury, and could have been contradicted by members of that jury, if their testimony on the trial of appellant differed from that given by them before the coroner"— can not be sustained, because the statement was excluded by the court and the jury given to understand that they were not to consider it. Therefore it could not have been prejudicial to appellant.

The fourth contention, relating to the admission for the Commonwealth of evidence in rebuttal, is equally untenable. The testimony was furnished by several witnesses, and was as to the location of the body of deceased immediately after the killing, location of blood spots, and the fact that no arms were found upon his person. Much of this testimony might have been introduced in chief, but it was made necessary and competent in rebuttal by the testimony of appellant, which brought out new particulars as to these matters, and besides, differed in many material respects from that of other witnesses introduced in chief by the Commonwealth. The testimony in question

was properly admitted.   The instructions aptly presented all the law of the case.

Being satisfied that the record is free from prejudicial error, and that appellant had a fair trial, the judgment is affirmed.